UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ICELYN GARCIA

                                               Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY TRANSIT
BUREAU POLICE OFFICER JESSICA GAVARS,
SHIELD NO. 24197, JOHN DOE POLICE OFFICERS 1-
4,

                                               Defendants.

------------------------------------------------------------------------ x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 27 2010 ★

BROOKLYN OFFICE

COMPLAINT AND
JURY DEMAND

Docket No. 10 3405

ECF CASE

KORMAN, J.
BLOOM, M.J.

Plaintiff Icelyn Garcia, by her attorneys, Stoll, Glickman & Bellina, LLP, for her complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of her Fourth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a May 29, 2009 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, assault, battery, false arrest, and false imprisonment.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth Amendment to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Police Officer Jessica Gavars, Shield No. 24197, was, at all times here relevant,

a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Gavaras was plaintiff's "arresting officer" and was under the command of the Transit District 34. Defendant Gavaras is sued in her individual capacity.

11. Police Officer John Does 1-4 were, at all times here relevant, police officers of the NYPD, and as such were acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Does were under the command of the Transit District 34 and are sued in their individual capacities.

12. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

13. Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14. On May 29, 2010 at approximately 2:30 p.m., plaintiff Icelyn Garcia and her cousin Alison Cepeda wanted to get on the R train at the 86th Street and 4th Avenue station in Brooklyn, New York.

15. Plaintiff Icelyn Garcia, a 24 year old student who has never been arrested, was carrying her miniature poodle in her arms. Plaintiff and her cousin swiped their

3

MetroCards, proceeding towards the train. Immediately after they swiped their MetroCards, the police officer, who plaintiff later learned to be defendant Police Officer Jessica Gavaras, stopped plaintiff and her cousin.

16. Defendant Gavaras asked plaintiff whether she had a bag for her dog and plaintiff replied no. Defendant Gavaras demanded plaintiff's identification and plaintiff complied. Plaintiff asked defendant why she needed her driver's license and offered to leave with the miniature poodle if it was a problem.

17. Plaintiff gave the miniature poodle to her cousin, who took her upstairs outside of the train station.

18. While plaintiff was waiting for the officer to finish looking at her license, plaintiff took out her phone and defendant Gavaras told her to "put it away or I'll take it". Plaintiff asked "why?". Then defendant tried to snatch the phone out of her hand. Plaintiff, still holding the phone, said "this is my property, what are you doing?". Defendant tried again to snatch the phone out of her hand, and plaintiff said "Stop - why are you doing this to me?"

19. Defendant then took out her handcuffs and tried to tackle plaintiff. Plaintiff put her hands up blocking herself as defendant again tried to lunge towards plaintiff. As defendant was lunging towards plaintiff, plaintiff was backing up, until she backed out of the turnstile and backed up against the wall immediately behind the turnstile.

20. Once she was backed up against the wall, defendant pinned plaintiff to the wall. At that point, John Doe officers 1-4 came into the train station.

21. John Doe officers, leaning against plaintiff on the wall, handcuffed her and a John Doe officer yanked her phone out of her hand, hurting her wrist.

22. Plaintiff was then held in a holding cell in the precinct for approximately 6 hours, where she was fingerprinted, photographed, and waited for the police to process her paperwork.

23. Plaintiff was charged with resisting arrest, disorderly conduct, and restricted areas and activities based on false statements by the defendant Gavars that she attempted to walk away when Gavars was issuing her summons, screamed, and resisted lawful arrest.

24. At Central Booking, plaintiff waited until 10:30 a.m. the next day to see a judge. She did not sleep at all from the time of her arrest until her release. A woman in her holding cell in Central Booking tried to solicit her to work as a prostitute.

25. Plaintiff consented to an adjournment in contemplation of dismissal at the arraignment.

26. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

27. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

28. Plaintiff filed a complaint with the Civilian Complaint Review Board.

## DAMAGES

29. As a direct and proximate result of the acts of defendants, plaintiff suffered the

following injuries and damages:

    a.    Violation of her rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b.    Violation of her New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    c.    Physical pain and suffering;

    f.    Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety; and

    g.    Loss of liberty.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### False Arrest and False Imprisonment
### (Against Officer Defendants)

30. The above paragraphs are here incorporated by reference.

31. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

32. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

33. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

34. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, imprisoned and falsely charged.

35. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

36. All of this occurred without any illegal conduct by plaintiff.

37. Plaintiff consented to an adjournment in contemplation of dismissal at her first court appearance.

38. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the United States Constitution.

39. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

<div style="text-align:center">

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

</div>

40. The above paragraphs are here incorporated by reference.

41. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

42. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

43. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

7

44. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

45. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

46. All of this occurred without any illegal conduct by plaintiff.

47. Plaintiff consented to an adjournment in contemplation of dismissal at her first court appearance.

48. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

49. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

50. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the Constitution of the State of New York.

51. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### THIRD CAUSE OF ACTION
New York State Law
False Arrest and False Imprisonment
(Against All Defendants)

52. The above paragraphs are here incorporated by reference.

53. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

54. Defendants intended to confine plaintiff, plaintiff was conscious of her confinement and did not consent to his confinement.

55. Plaintiff consented to an adjournment in contemplation of dismissal at her first court appearance.

56. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

57. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### FOURTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

58. The above paragraphs are here incorporated by reference.

59. Upon approaching, pushing, pinning plaintiff against the wall, handcuffing and arresting plaintiff, defendants made plaintiff fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive touching.

60. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching without her consent.

9

61. Defendants used excessive and unnecessary force with plaintiff.

62. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

63. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

<div align="center">FIFTH CAUSE OF ACTION
Negligence
(Against All Defendants)</div>

64. The above paragraphs are here incorporated by reference.

65. Defendants owed a duty of care to plaintiff.

66. Defendants breached their duty to plaintiff by attacking plaintiff with force and causing damage to plaintiff.

67. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

68. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

<div align="center">SIXTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)</div>

69. The above paragraphs are here incorporated by reference.

70. Upon information and belief, defendant City, through the NYPD, owed a duty

of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

71. Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

72. Upon information and belief, defendant officers were incompetent and unfit for their positions.

73. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

74. Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

75. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

### SEVENTH CAUSE OF ACTION
### MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

76. The above paragraphs are here incorporated by reference.

77. The City is liable for the damages suffered by plaintiff in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

78. The aforesaid event underlying plaintiff's factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

79. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[1]

80. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of

---

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

12

misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

81. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

82. The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373

were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[2]

83. The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[3]

84. The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

85. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. In 2002, the percentage of officers who

---

[2] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on February 18, 2010. On the website, the NYCLU collects the same data back to 2004.

were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[4] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

86. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

87. All of the aforementioned has created a climate where police officers and detectives make lies to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the

---

[3] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.

15

judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

88. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

89. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.  In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

---

[4] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

B.    Awarding plaintiff's punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff's reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:    July 22, 2010
Brooklyn, New York

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
71 Nevins Street
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com

TO:

City of New York
100 Church Street
New York, NY 10007

New York City Transit Authority
Police Officer Jessica Gavars
Shield No. 24197
Transit District 34
2800 West 6th Street
Brooklyn, NY 11224